INHABITANTS OF GORHAM *versus* INHABITANTS OF SPRINGFIELD.

The special act of 1834, c. 434, incorporating the town of Springfield, is to be considered as a public act, and as such not to take effect until after thirty days from the recess of the legislature.

The provision in the act that the territory "with the inhabitants be, and the same hereby is, incorporated into a town by the name of Springfield," is not sufficient to show that the legislature intended that the act should take effect immediately upon its approval by the Governor.

When a person leaves a town with the intention to go to another place and purchase a lot of land and settle there, the latter place does not become his dwelling and home, under the fifth mode of gaining a settlement by the act of. 1821, c. 122, unless that intention is carried into effect by having his dwelling and home actually established there before its incorporation into a town.

Such residences or homes as are referred to in that statute, may be abandoned, and a period elapse before new ones are acquired.

Towns exist at the pleasure of the State, and not at their own; and it is not necessary that a newly incorporated town should accept the act of incorporation. The rule applies only to private, not to public corporations.

THE action was to recover supplies furnished by the plaintiffs to Napthali Harmon and family, alleged to have their legal settlement in Springfield.

Harmon formerly had a settlement in Harrison, and continued to have one there, unless he had acquired a new one in Springfield by dwelling and having his home there at the time. of the incorporation of that town. No. 5 in the second Range was incorporated into a town by the name of Springfield, by an act approved Feb. 12, 1834.

The plaintiffs contended that the town was incorporated on that day; but the jury were instructed by SHEPLEY J. presiding at the trial, that the act did not take effect until thirty days after the session of the legislature terminated. By this instruction, the act took effect April 12, 1834. There were proceedings to organize under the act, March 27, 1834.

There was testimony to prove that when Harmon left Harrison to go to No. 5, he expressed an intention to purchase a lot of land and settle there and make it his home; that he went there *about Jan.* 13, 1834, and remained there with a brother and sister *a few days,* and then left and went into the

woods to work for men engaged in lumbering on lot No. 7, and there remained *about a fortnight,* and then returned to No. 5. or Springfield, where he worked at thrashing *for a few days*; that he was in Springfield *on Feb.* 12, 1834, *or at least, at the time when the news of the incorporation reached there;* that *during the spring,* he went to Shirley to settle up his business there, and get the few things he had left there in 1833; that he worked *sometime* in Lee, and was again in Springfield *about haying time,* and *from that time had established himself in Springfield as his home* until he went back to Harrison *in the fall of* 1836; that he went from thence to Gorham in the fall of 1837, where he was married, and continued to reside until the supplies were furnished for which this suit was brought.

The jury were instructed, that it was not sufficient that the pauper, when he left Harrison to go to No. 5, or Springfield, should have expressed the intention to settle there, unless he carried that intention into effect by having his dwelling and home established there before the act, incorporating that town, took effect.

The verdict was for the defendants, and was to be set aside, if the ruling or instructions were erroneous.

*Codman* and *Fox,* for the plaintiffs, contended: that the act incorporating Springfield took effect, so far as this case is effected by it, at the time of its passage. The St. of 1821, c. 122, mode 5, refers to the *time of the incorporation.* This was a complete and perfect act on Feb. 12, 1834. The town organized under the act before the expiration of thirty days from the close of the session, and thereby accepted the act; and were bound by it from the time of its passage. But the legislature can provide, that any act may take effect immediately, and they have done so in this case, by providing that No. 5, *be and hereby is incorporated* into a town by the name of Springfield. Unless this is the true construction, it will always be known beforehand when the incorporation is to take place, and measures will be taken in contemplation of it. Going into a town with the intention of residing there, makes

that his place of residence, whether he has acquired a per-manent right to remain there or not. The instruction is also erroneous, because it requires his home to be established in Springfield *before* the act took effect. It was enough, that his home was there at the time. *New Portland* v. *New Vineyard,* 4 Shep. 69; *Westbrook* v. *Bowdoinham,* 7 Greenl. 363; *Wilton* v. *Falmouth,* 3 Shep. 479; *Baring* v. *Calais,* 2 Fairf. 463; *Greene* v. *Windham,* 1 Shep. 225; *St. George* v. *Deer Isle,* 3 Greenl. 390.

*Deblois,* for the defendants, was stopped by the Court.

The opinion of the Court was by

SHEPLEY J. — The town of Springfield was incorporated by the act of the 12th of Feb. 1834, spec. acts, c. 434. The act of the 25th of Jan. preceding provided, that public statutes should take effect in twenty days from the date of their publication unless the provision of the statute otherwise ordered. The act of the 12th of March following repealed the act of the 25th of Jan. and provided, that all public statutes should take effect in thirty days from the recess of the legislature passing the same, unless the provision of the act should otherwise order. The effect of these enactments was considered in the case of *New Portland* v. *New Vineyard,* 16 Maine R. 69, which decided, that the public acts of that session passed after the 25th of Jan. of that year did not take effect until thirty days after the recess of the legislature; and that acts regulating the general interests of the State, or of any of its divisions must be regarded as public acts. It is contended, that the language of the act of incorporation, which declares, that township numbered five in the second range " with the inhabitants be, and the same hereby is incorporated into a town by the name of Springfield," shews an intention, that the act should take effect immediately. The use of language *in presenti,* is too common in legislation to afford any indication of an intention, that this act should take effect at an earlier date than the other general acts of that session. It was not necessary, that the town should accept the act of incorpora-

tion. The rule applies only to private, not to public corporations. The latter exists at the pleasure of the State, and not at their own pleasure.

The fifth mode, by which persons may gain a legal settlement, is " by dwelling and having their homes in any unincorporated place at the time, when the same shall be incorporated into a town." And it is contended, that the pauper must in contemplation of law have had a dwelling and home in Springfield after he left Harrison with an intention to purchase a lot of land and settle in that township. The statute provides, that legal settlements shall remain till new ones are acquired. But such residences or homes as are referred to in the statute may be abandoned, and a period elapse before new ones are acquired.

The case of *Hallowell* v. *Saco*, 5 Greenl. 143, authorized the instructions, that the intention to have a home in Springfield must be carried into effect by his actually becoming a resident there before he could be considered as dwelling and having his home there. It is not easy to perceive how he could have a home there " at the time when the same was incorporated," if he had not acquired it " before the act took effect incorporating that town."

*Judgment on the verdict.*